UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:                                          Case No. 13-17273-JKO
                                                Chapter 7
COMPREHENSIVE CLINICAL                          (Jointly Administered)
DEVELOPMENT, INC., et al.,

                    Debtors.

_____/

MARC P. BARMAT, not individually but           Adv. Proc. No. 15-01232-JKO
as Chapter 7 Trustee,

                    Plaintiff,

v.

JOHN J. MCGOVERN, an individual,
MARGARITA MORALES-PEREZ, an individual,
STEPHEN M. KRUPA, an individual,
DAVID EICHLER, an individual,
JOHN DOCHERTY, an individual,
JOSEPH RILEY, an individual, and
MARVIN MOSER, a deceased individual,

                    Defendants.

_____/

**JOINT MOTION BY DEBTORS' FORMER CHIEF FINANCIAL OFFICER AND
DIRECTORS TO WITHDRAW THE ORDER OF REFERENCE OF ADVERSARY
PROCEEDING, AND FOR ABSTENTION, PURSUANT TO 28 U.S.C. § 157(C), (D) &
(E), BANKRUPTCY RULE 5011, LOCAL BANKRUPTCY RULE 5011-1, S.D. FLA. L.R.
87.3, AND ¶1(A)&(B) OF THE STANDARD ORDER SETTING FILING AND
DISCLOSURE REQUIREMENTS FOR PRETRIAL AND TRIAL,
AND INCORPORATED MEMORANDUM OF LAW**

Defendants Margarita Morales-Perez ("Perez"), Stephen M. Krupa ("Krupa"), David

Eichler ("Eichler"), John Docherty ("Docherty"), and Joseph Riley ("Riley") (collectively, the

"Movants" or "Defendants"), by and through their respective undersigned counsel, and pursuant

to 28 U.S.C. §157(c)(d) & (e), Federal Rule of Bankruptcy Procedure 5011(a), Local Bankruptcy

Rule 5011-1, S.D. Fla. L.R. 87.3, and ¶1(a)&(b) of the standard Order Setting Filing and Disclosure Requirements for Pretrial and Trial (the "Pretrial Order") (D.E. 3 in the Adversary Case), file this motion (the "Motion") requesting an Order of the United States District Court for the Southern District of Florida (the "District Court") to abstain from and withdraw the General Order of the District Court referring all cases and proceedings to the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") that arise under or are related to Title 11 of the United States Code (the "Bankruptcy Code"), which has now been codified into District Court Local Rule 87.2 (the "Order of Reference")*, as it applies to this Adversary Proceeding Case No. 15-01232-JKO (the "Adversary Case"), and all 17 counts of the Adversary Complaint (the "Complaint")(D.E. 1) filed by Marc P. Barmat (the "Plaintiff" or "Trustee"), as the Chapter 7 Trustee in Bankruptcy for the jointly administered Chapter 7 bankruptcy estates of Comprehensive Clinical Development, Inc., a Delaware corporation ("CCD"), and Comprehensive Clinical Development NW, Inc., a Washington state corporation ("CCDNW") (collectively the "Debtors"), jointly administered under CCD's Bankruptcy Case No. 13-17273-JKO (the "CCD Bankruptcy Case")[1], pending before Bankruptcy Judge John Olson ("Judge Olson") in the Bankruptcy Court, and in support thereof states as follows:

## The Debtors' Bankruptcies

1.      On March 29, 2013, Debtors filed voluntary Chapter 11 bankruptcy petitions in the above captioned jointly administered Bankruptcy Case in the Bankruptcy Court (D.E. 1 in the CCD Bankruptcy Case)  which cases were subsequently converted to Chapter 7 on August 29, 2013 (D.E. 556 in the CCD Bankruptcy Case), and for which Plaintiff on that same date ([D.E.

---

[1] CCDNW's bankruptcy case number is 13-17282 (the "CCDNW Bankruptcy Case") (the CCD Bankruptcy Case and the CCDNW Bankruptcy Case shall be collectively referred to herein as the "Bankruptcy Case" since their joint administration was ordered at D.E. in the CDD Bankruptcy Case, and at D.E. 18 in the CCDNW Bankruptcy Case).

557 in the CCD Bankruptcy Case) was appointed trustee over each of the Debtors' respective jointly administered Chapter 7 bankruptcy estates. Movants are all former officers and directors of the Debtors.

### This Adversary Proceeding and Complaint

2.      Three days before certain statute of limitations were about to expire, on March 26, 2015, Plaintiff (on behalf of, but without distinction between, both Debtors' respective Chapter 7 bankruptcy estates) filed the 17 count Complaint, demanding a right to trial by jury, which Complaint, while alleging nothing more than conclusory facts, covered 293 numbered paragraphs over 109 pages, against Defendant John J. McGovern ("McGovern")[2], as the former President and Director of the Debtors[3], Perez as the Senior VP of Finance and Operations, and later, Chief Financial Officer of the Debtors,[4] along with the balance of the Movants in their respective capacities as member of  the Board of Directors[5] of the Debtors, for breach of their respective fiduciary duties under both Delaware and Florida law[6], for avoidance of avoidable transfers under multiple legal theories in one count[7] against all Defendants, and as objections to[8]

---

[2] McGovern, who had filed Proofs of Claims in the CDDNW Bankruptcy Case is filing his own separate joinder in this Motion, and an additional briefing of these issues as it relates to his claims. Movants incorporate and adopt McGovern's additional briefing and arguments into this Motion  as if fully set forth herein.

[3] ¶4(a), Counts 1 & 2 of the Complaint.

[4] ¶4(b), Counts 3 & 4 of the Complaint.

[5] ¶5, Counts 5 through 14 of the Complaint.

[6] It is inconceivable how Movants can be liable under separate counts under *both* Delaware and Florida law, since CDD and CDDNW were respectively incorporated in Delaware and Washington state, and under Florida's procedural choice of law rules the substantive law of those two jurisdictions, would apply in connection with the alleged breaches of Movants' corporate duties to the Debtors, under the clear dictates of the Eleventh Circuit in its ruling in *Mukamal v. Bakes*, 378 Fed. Appx. 890, 897 (11th Cir. 2010).

[7] ¶¶278-285, Count 15 of the Complaint. Plaintiff asserts confusingly and improperly plead multiple legal theories of avoidable transfers based upon 11 U.S.C. 544, 547, 548, 550 and state law (without reference to which state law).

[8] ¶¶287-288, Count 16 of the Complaint.

3

and the subordination of[9] all of Defendants claims, whether or not any claims were even filed by them.

### The Pretrial Order

3.     On March 27, 2015, the Bankruptcy Court issued its Pretrial Order (D.E. 3 in the Adversary Case), which states in relevant part on pgs. 1 & 2 that:

> 1     (a).     **RIGHT TO JURY TRIAL; WAIVER**. Unless each party has timely filed a statement of consent under Local Rule 9015-1(B), and unless otherwise ordered by the Court, not later than ten (10) days before the pretrial conference, as the same may be continued by the Court, each party requesting a jury trial on any issue in this proceeding shall file with this court pursuant to Local Rule 5011-1 a motion for withdrawal of the reference. FAILURE OF ANY PARTY TO FILE A MOTION TO WITHDRAW THE REFERENCE ON OR BEFORE THE DEADLINE PROVIDED IN THIS PARAGRAPH SHALL CONSTITUTE WAIVER BY SUCH PARTY OF ANY RIGHT TO TRIAL BY JURY IN THIS PROCEEDING.
>
> (b). **OBJECTION TO ENTRY OF FINAL ORDERS AND JUDGMENTS BY THE BANKRUPTCY COURT; CONSENT**. Unless otherwise ordered by the Court, not later than ten (10) days before the pretrial conference, as the same may be continued by the Court, each party objecting to the entry of final orders or judgments by this court on any issue in this proceeding, whether or not designated as "core" under 28 U.S.C. §157(b), shall file with this court a motion requesting that this court determine whether this proceeding is a core proceeding or otherwise subject to the entry of final orders or judgments by this court. Any such motion shall be treated as an objection to the entry of final orders or judgments by this court. FAILURE OF ANY PARTY TO FILE A MOTION ON OR BEFORE THE DEADLINE PROVIDED IN THIS PARAGRAPH SHALL CONSTITUTE CONSENT BY SUCH PARTY TO THIS COURT ENTERING ALL APPROPRIATE FINAL ORDERS AND JUDGMENTS IN THIS PROCEEDING. Nothing in this paragraph limits this court's ability to determine sua sponte whether this proceeding is a core proceeding under 28 U.S.C. §157(b)(3) or otherwise subject to entry of final orders or judgments by this court.

---

[9] ¶¶290-292, Count 17 of the Complaint.

**Movants Do Not Consent to the Bankruptcy Court Presiding Over the Jury Trial of, or the Entering of Final Order and Judgments in, this Adversary Case**

4.      The Pretrial Conference referenced in ¶1(a)&(b) of the Pretrial Order is currently set for September 24, 2015 at 9:30 a.m. (D.E. 15 in the Adversary Case). It is pursuant to ¶1(a)&(b) of the Pretrial Order, and 28 U.S.C. §157(c)(d) & (e), Federal Rule of Bankruptcy Procedure 5011(a), Local Bankruptcy Rule 5011-1, and S.D. Fla. L.R. 87.3, that the Movants file this Motion, and expressly state that they neither consent to the Bankruptcy Court entering final orders and judgments, nor to its conducting a jury trial in this matter, to which Movants maintain their rights to assert under 28 U.S.C. §157(c) & (e).

**The Relief Requested**

5.      Cause exists for the District Court to withdraw the reference to the Bankruptcy Court for the entirety of this Adversary Proceeding or, at least, for all case dispositive pleadings and trial. In particular, since Plaintiff has sought a jury trial in this matter, Movants jointly request abstention and the withdrawal of the reference of this matter, under 28 U.S.C. §157(d), back to the District Court, if not for the entirety of the Adversary Case, then at least for:

(a) the conducting of the jury trial in this matter, and

(b) for making final rulings with respect to all dispositive motions and trial, (including, but not limited to, motions to dismiss, for judgment on the pleadings, for summary judgment, for judgment notwithstanding a verdict, for directed verdicts, etc.) in this matter,

and that, at most, the District Court:

(a) refer back to the Bankruptcy Court for adjudication all non-final pretrial matters, including presiding over discovery disputes, and

(b) directing that the Bankruptcy Court shall be limited to issuing reports and recommendations of proposed findings of fact and conclusions of law to the District Court, for *de novo* review to approve or reject, on all dispositive motions in this Adversary Case.

## What Kind of Cases Can Article I Bankruptcy Judges Hear and Decide

6. Article III of the Constitution states that the judicial power is vested in courts created under that Article, which is to say, judges appointed by the President, confirmed by the Senate and enjoying life tenure. Over the years, Congress created many other judges, such as U.S. Magistrate Judges, Administrative Law Judges and Bankruptcy Judges, to help with the workload of the federal courts. The Order of Reference in this district is such a vehicle to assist the District Court with its workload. These Article I judges were not appointed by the President or confirmed by the Senate and did not enjoy life tenure. While they were under the supervision of Article III Judges, some of these legislatively created judges enjoyed great levels of independence. The relief requested herein seeks to have this District Court decide how this Adversary Case will be adjudicated within the constitutional framework as established by several recent pronouncements by the Supreme Court setting forth the parameters of bankruptcy court jurisdiction.

## Stern

7. In *Stern v. Marshall*, 131 S.Ct. 2594 (2011), the Supreme Court said that Congress did not have unlimited power to create adjuncts to assist the Article III judges. Specifically, the Supreme Court said that the Bankruptcy Court did not have the power to enter a final judgment on a state law counterclaim brought by a debtor against a creditor. The *Stern* Court recognized that the bankruptcy court had statutory authority to render a final judgment on the debtor's compulsory counterclaim because it was a core proceeding under 28

U.S.C. §157(b)(2)(C), *Id.* at 2604–05, but held the exercise of that authority an unconstitutional usurpation of the judiciary's power under Article III, *Id.* at 2620 ("Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984.")

8.  The U.S. Constitution's system of separation of powers prohibits Congress from removing cases from the judiciary that are "the subject of a suit at the common law, or in equity, or admiralty." *Id.* at 2609 (citing *Murray's Lessee v. Hoboken Land & Improvement Co.,* 18 How. 272, 284, 15 L.Ed. 372 (1856)). "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III Courts." *Id.* (citations omitted) (quoting *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, at 90 (1982)(Rehnquist, J., concurring in judgment).

9.  Bankruptcy courts may not hear claims reserved to Article III courts because they are not Article III courts, or adjuncts of Article III courts when hearing core proceedings. Bankruptcy judges hold their offices without the Article III, Section 1 protections of lifetime appointments and salaries that may not be diminished by Congress. 28 U.S.C. § 152(a)(1). See also, *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, at 61 (1982). Since non-Article III courts do not offer those assurances of an independent judiciary, they do not offer the same protections for both the Judicial Branch and the individual, *Stern,* 131 S.Ct. at 2609, and cannot hear all of the same claims an Article III federal court may hear. Additionally, bankruptcy courts, in exercising jurisdiction over core proceedings, do not act as adjuncts of Article III courts. Bankruptcy courts adjudicating core proceedings have broad authority to hear

"all matters of fact and law in whatever domains of the law," and can enter final judgments, meaning they are not merely acting as adjuncts to the district courts. *Id.* at 2618–19; *see also Northern Pipeline,* 458 U.S. at 85–86 ("[T]he bankruptcy courts issue final judgments, which are binding and enforceable, even in the absence of an appeal. In short, the 'adjunct' bankruptcy courts created by the [1978] Act exercise jurisdiction behind the facade of a grant to the district courts.") Since the bankruptcy courts are neither Article III courts nor adjuncts thereof, they generally may not hear claims that must be adjudicated by Article III courts.

10. In order for Congress to allow a non-Article III court, like the Bankruptcy Court, to adjudicate claims that must normally be heard by an Article III court, the claim must fall within one of the recognized exceptions to Article III. Such exceptions arise where "the grant of power to the Legislative and Executive Branches was historically and constitutionally so exceptional that the congressional assertion of a power to create legislative courts was consistent with, rather than threatening to, the constitutional mandate of separation of powers." *Northern Pipeline,* 458 U.S. at 64 (plurality opinion). Previously recognized exceptions include territorial courts, courts martial, and the "public rights" exception. *Id.* at 64–67. The cases within the public rights exception historically involved disputes "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments," *Stern,* 131 S.Ct. at 2612 (citing *Crowell v. Benson,* 285 U.S. 22, 50–51, 52 S.Ct. 285, 76 L.Ed. 598 (1932)), but has more recently evolved to include cases involving rights "integrally related to particular federal government action," *Stern,* 131 S.Ct. at 2613 (citing *U.S. v. Jicarilla Apache Nation,* —— U.S. ——, 131 S.Ct. 2313, 180 L.Ed.2d 187 (2011)).

### Post-Stern

11. Judges, practitioners and academics alike wondered whether the system of

8

independent Article I Bankruptcy Judges could survive the *Stern* ruling. This uncertainty was engendered by the narrow scope of the actual issue decided and the sweeping language used by Chief Justice Roberts to support it. Taken to its fullest extent as suggested by the dissenting justices in that case, it could have meant that Bankruptcy Court's lacked the power to decide anything that could have been decided by courts of law in 1789 and parties lacked the authority to consent to a different result. However, the sky did not fall following *Stern* and the Bankruptcy Courts continued to operate under a system of administrative orders from the Bankruptcy and District Courts around the country, like the ones routinely issued by the Bankruptcy and District Courts of this district with regard to the withdrawal of the reference of adversary proceedings, similar to this one. However, there did remain a split of authority around the country as to whether parties could consent to entry of a final judgment by a Bankruptcy Court in a *Stern* case.

### a. Executive Benefits

12. Last year, in *Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165 (2014), the Supreme Court avoided the consent issue. Rather, it dealt with the so-called statutory gap between statutorily core proceedings that were nonetheless unconstitutional, following its *Stern* ruling. That gap was created because 28 U.S.C. §157 does not authorize bankruptcy courts to issue reports and recommendations in core proceedings. In *Executive Benefits*, the Supreme Court clarified that bankruptcy courts could issue a report and recommendation in any case in which it could not issue a final judgment, thereby eliminating the so-called statutory gap, The Supreme Court found that regardless of the bankruptcy court's authority to enter a final judgment, it could hear cases within its jurisdiction and submit a report and recommendation to the district court which could review it on a *de novo* basis. This was important because the

bankruptcy court decision was a summary judgment which the district court was bound to review on a *de novo* basis in any event. As a result, even if the bankruptcy court lacked authority to enter a final judgment, the district court's ruling on appeal was the functional equivalent of entry of a final judgment by that court. The *Executive Benefits* ruling preserved the ability of bankruptcy courts to hear disputes in the first instance.

### b. Wellness

13. However, the *Executive Benefits* ruling left open the question of whether bankruptcy courts could issue final orders in all matters with consent or by waiver. The consent issue had enormous practical significance. If parties could not give valid consent, they could have an advisory trial in the bankruptcy court and then request a do-over in the district court if they didn't like the result. There was also the possibility of a party agreeing to litigate in bankruptcy court and ignoring the result on the basis that it had never been approved by the district court. The issue split the Circuit Courts, whereby the Fifth, Sixth and Seventh Circuits nixed consent, while the Ninth Circuit permitted it.

14. Last week, the Supreme Court again weighed in on the scope of a bankruptcy court's jurisdiction in the *Wellness* decision[10], and resolved that split left open by its *Stern* and *Executive Benefits* decisions[11], and ruled that the right to entry of a final judgment by an Article III court, like the right to trial by jury, is a personal right which can be waived or consented away, thereby establishing that parties can consent to entry of a final judgment by a bankruptcy judge. Movants, by way of this Motion, want to make it clear they have no intention to either waive or consent those rights away.

15. Justice Sotomayor in *Wellness* began her discussion of consent by stating,

---

[10] *Wellness International Network, Ltd. V. Sharif*, Slip opinion, Case No. 13-935 (U.S. May 26, 2015).

[11] Id.

(a)djudication by consent is nothing new."[12] After discussing cases, the Supreme Court held that the right to an Article III tribunal is both a personal one which may be waived and a structural one that must be respected. Justice Sotomayor wrote:

> "The entitlement to an Article III adjudicator is "a personal right" and thus ordinarily "subject to waiver," (citation omitted). Article III also serves a structural purpose, "barring congressional attempts 'to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts and thereby prevent[ing] 'the encroachment or aggrandizement of one branch at the expense of the other.'" (citations omitted). But allowing Article I adjudicators to decide claims submitted to them by consent does not offend the separation of powers so long as Article III courts retain supervisory authority over the process."[13]

16. In reaching this formulation, Justice Sotomayor resolved a question which had been dividing commentators for years: was the right to an Article III Court personal and thus waivable or was it structural and therefore immutable? Although the Supreme Court in *Wellness* answered "both," it did so in a way that set a low bar for satisfying the structural concerns of the Constitution. So long as the Article III judiciary, the District Court herein, retained "supervisory authority" over the legislatively created courts, separation of powers was not violated. Stated another way, Congress can create judicial helpers for the Article III Courts, like the Bankruptcy Court herein, but it cannot create an entire independent system out of whole cloth.

17. Under this standard, it is clear that the Bankruptcy Court herein is under the supervisory authority of the Article III District Court. Bankruptcy judges, like Bankruptcy Judge Olson, are appointed by Article III judges and may be removed by them. Our Bankruptcy Court is a mere unit of our District Court, and it enjoys its authority by virtue of the Order of Reference from the District Court, who also has the power to withdraw that reference. Indeed, if the District Court wished to do so, it could revoke the Order of Reference completely and decide all

---

[12] *Id.* at, pg. 8.

[13] *Id.* at pgs. 11-12.

bankruptcy matters. Movant is not asking the District Court to do so, but as indicated in ¶5 above, is just merely seeking to remove the Order of Reference for the purposes of trial, particularly jury trial, and for all dispositive motions, and that the Bankruptcy Court, just like a magistrate court, be required that in its decisions that it make findings of fact and conclusions of law, which would then be presented to the District Court, in the form of a report and recommendation, subject to *de novo* review by the District Court.

18. The Supreme Court in *Wellness* further noted that the Bankruptcy Court does not possess "free-floating authority to decide claims traditionally heard by the Article III Courts" but instead may hear "a narrow class of common law claims" which are incidental to its primary bankruptcy powers.

19. Finally, the Supreme Court noted that Bankruptcy Courts were not created by Congress "to aggrandize itself or humble the Judiciary." Instead, the Supreme Court noted the practical benefit to the Article III Judiciary from having Bankruptcy Courts:

> "Congress could choose to rest the full share of the Judiciary's labor on the shoulders of Article III judges. But doing so would require a substantial increase in the number of district judgeships. Instead, Congress has supplemented the capacity of district courts through the able assistance of bankruptcy judges. So long as those judges are subject to control by the Article III courts, their work poses no threat to the separation of powers."[14]

The *Wellness* decision acknowledges the practical reality that without legislatively created courts, "the work of the federal court system would grind nearly to a halt."[15] In a footnote, the Supreme Court noted that the 349 bankruptcy judges hear twice as many cases as all of the district and circuit judges combined.

20. Movants are mindful of that fact, and therefore the relief requested in this Motion

---

[14] *Id*. at pgs. 14-15.

[15] *Wellness*, pg. 2.

seeks nothing more than asking the District Court to exercise, and not abdicate completely, its supervisory authority and control of these matters that the Bankruptcy Court may not constitutionally adjudicate without the Movants consent.

21. Having ruled that consent was possible, the Supreme Court in *Wellness* ruled that it need not be express:

> "Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute . . . mandate express consent; it states only that a bankruptcy court must obtain "the consent"—consent *simpliciter*—"of all parties to the proceeding" before hearing and determining a non-core claim."[16]

Thus, the Supreme Court remanded the case to the Seventh Circuit to decide the question of whether consent had indeed been given. It is against this background that Movants seek withdrawal of the Order of Reference of this Adversary Case.

### Standard for Determining the Withdrawal of the Reference

22. The District Court may withdraw the reference to the Bankruptcy Court for *cause*. 28 U.S.C. § 157(d). Although the Bankruptcy Code does not define "cause," courts in the 11th Circuit consider the following factors in determining whether it exists: (1) the advancement of uniformity in bankruptcy administration, (2) decreasing forum shopping and confusion, (3) promoting the economical use of parties' resources, (4) facilitating the bankruptcy process, (5) whether the claim is core or non-core, (6) efficient use of judicial resources, (7) a jury demand, and (8) prevention of delay. *Osborne v. Kadock (In re Aurora Capital, Inc.)*, 2013 U.S. Dist. LEXIS 70437, *4 -5 (S.D.Fla. May 17, 2013) *citing Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 742 (11th Cir. 2000).

23. In determining whether to withdraw the reference, "a district court should first

---

[16] *Id*. at pg. 18.

evaluate whether" the bankruptcy court can fully adjudicate the proceeding because "questions of efficiency and uniformity depend largely on the character of the proceeding." *Hyman v. Capital One Bank (USA) N.A. (In re Ausburn),* 2010 U.S. Dist. LEXIS 134536, at \*\*2-3 (M.D.Fla. December 10, 2010). When a proceeding cannot be fully adjudicated by the bankruptcy court, judicial efficiency is increased by withdrawal. *See In re Orion Pictures Corporation,* 4 F.3d 1095, 1101 (2nd Cir. 1993).

24. Withdrawal of the reference and abstention is particularly warranted in this case. The litigation is in an early stage and Movants have yet to file a motion to dismiss (which they intend to do), intend to assert their constitutional right to have what remains of the Complaint, after such a motion is heard, be tried by a jury before the District Court, and no discovery in this Adversary case, as of yet, has been propounded by any party[17]. The Trustee's primary causes of action against Movants, and McGovern, are non-core and, therefore, the Bankruptcy Court cannot enter final judgment on them. As noted, the Trustee has exercised, and all of the Defendants intend to exercise, their demand for a jury trial, while none of the Defendants consent to the jury trial occurring in the Bankruptcy Court. Further, withdrawing the reference will ensure uniformity in administration, shorten adjudication of the Adversary Proceeding, and will conserve the parties' and courts' resources.

**The Jury Trial Demand**

25. While none of the above mentioned factors are determinative, courts have

---

[17] Though Plaintiff (and its predecessor creditor's committee) took extensive 2004 examinations of Movants and others in the Bankruptcy Case (D.E. 859 , 864, 866, 868, 871, 872, 927, 928, 933, 934, See also, D.E. 285, 286, 781-787, 854, 855, 858, 860, 863-877, 926-928, 933-935, 938-940, 943), he still nonetheless could neither plead accurate and sufficient non-conclusory factual allegations that would show that he is plausibly entitled to any relief under any of the legal theories as plead, as a matter of law, under the Fed. R. Civ. P. 8 pleading standards, as set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009).

explained that where, as here, "a demand for a jury trial in a non-core case can, in itself, provide sufficient cause to withdraw the reference." *In Aurora Capital* at \*2 & 5. A demand for a jury trial favors withdrawing the reference. *See Geron v. Levine (In re Levine)*, 2012 U.S. Dist. LEXIS 12292, at \*9-10 (S.D.N.Y. February 21, 2012). The Trustee, has demanded, and Defendants intend to all demand a jury trial. Since Defendants do not consent to a jury trial before the Bankruptcy Court, the District Court must conduct the jury trial in this Adversary Proceeding. *See* 28 U.S.C. § 157(e) ("the bankruptcy judge may conduct the jury trial [only] with the express consent of all the parties."); *see also* Fed.R.Bankr.P. 9015(b) ("If the right to a jury trial applies . . . the parties may consent to have a jury trial conducted by a bankruptcy judge."). Accordingly, as all of the parties have demanded a jury trial and this case is non-core, this factor favors withdrawing the reference to the Bankruptcy Court.

**The Claims Against Movants are Non-Core.**

**26.** A determination that a cause of action is non-core weighs in favor of withdrawing the reference. *See Residential Funding Co., LLC v. Suntrust Mortg., Inc. (In re Residential Capital, LLC),* 2015 U.S. Dist. LEXIS 2093, at \*23 (S.D.N.Y. February 20, 2015). The crux of the Complaint are the claims against Movants for their respective breaches of fiduciary claims brought under state law[18], and a Chapter 5 avoidance cause of action brought under a hodgepodge of legal theories[19], none of which are core proceedings under 28 U.S.C. §157(b)[20].

---

[18] See fns. 2-4.

[19] See fn. 5.

[20] While the Chapter 5 avoidance claim may be statutorily core, it is nonetheless constitutionally non-core, under the United States Supreme Court decisions in *Stern v. Marshall*, 131 S.Ct. 2594 (2011); *Executive Benefits Ins. Agency v. Arkinson*, 134 S. Ct. 2165 (2014); and *Wellness International Network, Ltd. V. Sharif*, Slip opinion, Case No. 13-935 (U.S. May 26, 2015).

As noted, Plaintiff has sought a jury trial, and there can be no dispute that as to the state law breach of duty claims, Movants are entitled to trial by jury.

### State Law Breach of Duty Claims Are Neither Statutorily Nor Constitutionally Core

27. Breach of fiduciary duty claims are quintessential "non-core" claims. *See Official Comm. of Unsecured Creditors of Allied Sys. Holding v. Yucaipa Am. Alliance Fund I, L.P. (In re Allied Sys. Holdings)*, 524 B.R. 598, 606 (Bankr.D.Del. 2015); *In re Wash. Mut., Inc.,* 2012 Bankr. LEXIS 4673, at *2 (Bankr. D. Del. Oct. 4, 2012) ("[The] breach of fiduciary duty claims are ordinary state law causes of action of the type that are brought in state courts across the country with no connection to the Bankruptcy Code or a bankruptcy case."); and *Peterson v. 610 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 219 B.R. 363, 370 (Bankr.S.D.N.Y. 1998). Accordingly, the Trustee's Fiduciary Duty Claims are non-core.

### Chapter 5 Avoidance Claims Are Not Constitutionally Core

28. As to the avoidance count in Count 15, in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court considered "whether the Seventh Amendment grants [defendants] a right to a jury trial" in an action by a trustee to recover Chapter 5 avoidable transfers. 492 U.S. at 65 n. 19, 109 S.Ct. at 2803. The defendants in that case—the recipients of allegedly avoidable transfers like some, but not all the Defendants herein—were entitled to a jury trial on the bankruptcy trustee's Chapter 5 avoidance claim unless the claim fell within the public rights doctrine. The Supreme Court ultimately concluded that a Chapter 5 avoidance action filed on behalf of a bankruptcy estate, did not fall within the "public rights" exception. The Supreme Court reasoned that Chapter 5 avoidance suits were " 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors'

16

hierarchically ordered claims to a pro rata share of the bankruptcy res.' " *Id.* at 56, 109 S.Ct. at 2782. As a consequence, the Supreme Court concluded that Chapter 5 avoidance actions were " 'more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions.' "*Id.* at 56, 109 S.Ct. at 2782. As such, as to Count 15, Defendants have a right to trial by jury that can only be presided over by an Article III judge of the District Court.

## Avoidance, Objection and Subordination Claims Predicated Upon State Law Breach of Duty Claims Are Not Core Either

29. Further, notwithstanding those counts seeking a blanket objection to and subordination of all Defendants' claims[21], none of the Movants, and only Defendant McGovern, are creditors of Debtors. In fact, the claims bar date of December 31, 2013[22] had long since passed at the time of the filing of the Complaint, yet a simple review of the claims registers in both cases reveals that of all the Defendants, only McGovern had ever filed a proof of claim[23] in the Bankruptcy Case. With the exception of McGovern having filed claims in the CDDNW Bankruptcy Case, Movants are not creditors of Debtors, and have not in any way sought to participate in Debtors' Chapter 11 or 7 bankruptcy process (other than as witnesses under Fed. R. Bankr. P. 2004 examinations), nor otherwise consented to the jurisdiction of the Bankruptcy Court over it for the purposes of adjudicating this dispute. McGovern will be addressing separately in his own briefing the impact of his filing of Proofs of Claim, and his intent to withdraw the same, on the withdrawal of the reference of the claims asserted against him.

---

[21] See fn. 6 & 7.

[22] D.E. 559 in the CDD Bankruptcy Case, and D.E. 46 in the CDDNW Bankruptcy Case.

[23] So since McGovern has only filed Proof of Claim Nos. 26, 27 & 28 in the CCDNW Bankruptcy Case, and has filed no claim in the CCD Bankruptcy Case, there are actually no Defendants who have filed any claims in the CDD Bankruptcy Case.

However, none of the Movants have ever filed or claim or done anything to ever implicate that they intend to submit to the jurisdiction of the Bankruptcy Court. As such, the Bankruptcy Court cannot fully adjudicate this Adversary Proceeding.

30. The linchpin of the Trustee's Complaint is that Defendants breached their fiduciary duties to the Debtors. The avoidance[24], objection[25] and subordination[26] counts are all predicated on those targeted Defendants not providing reasonably equivalent value to the Debtors on the basis of their respective breaches of duties to the Debtors under state law.[27] As for these Non-Fiduciary Duty Claims, the Trustee's theory is that due to Defendants' alleged breach of their respective fiduciary duties, they did not provide reasonably equivalent value for their compensation, services and expenses from the Debtors or Claims against the Debtors. Therefore, the Trustee's remaining Non-Fiduciary Duty Claims are all directly derived from and are inextricably factually intertwined with the Trustee's Fiduciary Duty Claims.

31. As such, a ruling on the former necessarily requires a determination as to whether the particular Defendant is liable for the former. Therefore, the District Court, even on the objection and subordination of McGovern's claims[28], must first make a final adjudication by a dispositive motion, or after having presided over a jury trial, of the substantive state law claims for breaches of corporate duties asserted against the officers and directors of the Debtors by Plaintiff. If those claims are defeated by either motion or trial, Plaintiff's avoidance, objection and subordination claims fail as well. Put another way, if the District Court determines that a

---

[24] See fn. 5.

[25] See fn. 6.

[26] See fn. 7.

[27] See fns. 2-4.

[28] Though those counts are also plead against the balance of the Movants who have not even timely filed any such claims.

particular Defendant did not breach his or her fiduciary duties to the Debtors, then he or she is not liable for the Non-Fiduciary Duty Claims. As such, the Non-Fiduciary Duty Claims are also non-core as they necessarily require a determination as to whether the targeted Defendants breached their fiduciary duties to the Debtors.

32. Such state law fiduciary duty claims are non-core by their very nature, both statutorily and constitutionally, and as such the Bankruptcy Court lacks jurisdiction, without the consent that Movants do not offer, to preside over a jury trial or make final dispositive rulings with respect to these claims. Since the Bankruptcy Court lacks jurisdiction to enter final orders in non-core matters, it neither can enter a final judgment on the Trustee's Fiduciary Duty Claims and, likely, his Non-Fiduciary Duty Claims. Therefore, this factor favors withdrawing the reference.

33. Regardless, even if the District Court determines that the Non-Fiduciary Duty Claims are core, it is in all parties' and the courts' interest for the District Court to consider the claims together as the Fiduciary Duty Claims are the Trustee's primary causes of action, require the most complex factual discovery and analysis, seek the most damages by far,[29] and the Bankruptcy Court lacks jurisdiction to finally determine these matters. For these reasons, Movants seek withdrawal of the Order of Reference of this matter to the District Court for trial and final dispositive rulings, as requested in ¶5 herein above.

### Economical Use of the Court's and Parties' Resources

**34.** Withdrawing the reference will promote the economical use of the courts' and

---

[29] *Cf.* alleged damages of $5,000,000 related to fiduciary duty claims with McGovern's Claims worth approximately $350,000 and his pre-petition compensation in the amount of approximately $415,000 that the Trustee seeks to avoid.

parties' resources. As noted, a bankruptcy court may only enter a final judgment in a core proceeding.[30] As this case revolves around non-core claims, i.e. the Fiduciary Duty Claims, the Bankruptcy Court cannot finally adjudicate it. Thus, if the District Court does not withdraw the reference, it will be obligated to review the Bankruptcy Court's findings of fact and conclusions of law *de novo*. This process will only serve to unnecessarily multiply the parties' and the courts' efforts in the litigation. Withdrawing the reference serves to conserve the courts' and parties' resources. Therefore, this factor favors withdrawing the reference.

### Speed, Efficiency, and Consistency in Court Rulings

**35.** Withdrawing the reference will also advance and facilitate uniformity in the proceeding and decrease delay and potential confusion. If the reference is not withdrawn, the Adversary Proceeding will be litigated in multiple courts. Conducting this Adversary Proceeding in multiple courts will not only create delays and inefficiencies, but may also result in confusion and divergent outcomes within the same proceeding. Similarly, as discussed, a determination regarding the Trustee's Non-Breach of Fiduciary Duty Claims rely on the theory that certain Defendants' alleged breach of fiduciary duty to the Debtors means that they would not be entitled to their pre-petition officer and directors compensation and reimbursement, or Claims against the Debtors' estates. Accordingly, if the Adversary Proceeding is bifurcated, the Bankruptcy Court would necessarily have to wait until the District Court determined the extent of those Defendants' liability, if any, on the Trustee's Fiduciary Duty Claims respectively brought against them. This would cause an untenable delay in the Adversary Proceeding. Accordingly, these factors also favor withdrawing the reference to the Bankruptcy Court for the entirety of the Adversary Proceeding.

---

[30] 28 U.S.C. § 157(c)(1). "In non-core proceedings, a bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court, which may enter final judgment after *de novo* review." *Fisher Island Invs., Inc. v. Solby+Wstbrae Partners*, 778 F.3d 1172, 1189-1190 (11th Cir. 2015) (internal citations omitted).

### Effect of Wellness on this Proceeding

36. As a result of *Wellness*, Movants want to make it abundantly clear to both the Bankruptcy and District Courts that they have no intention of consenting to the Bankruptcy Court conducting a jury trial, or making final adjudications, in this matter. *Wellness* has not changed the fact that the Bankruptcy Court still lacks the constitutional authority to adjudicate the Trustee's breach of duty and avoidance claims against all Movants, barring their consent, nor the claims objection and subordination, which is only applicable to McGovern, but still nonetheless relies upon a ruling on the clearly non-core breach of duty claims against him. *In re Blixseth*, 2011 WL 3274042, *10-12 (Bankr. D.Mont. August 1, 2011); *In re Teleservices Group, Inc.*, --- B.R. ----, 2011 WL 3610050, *19 (Bankr.W.D.Mich. Aug 17, 2011); see also, *See In re Innovative Communication Corporation*, 2011 WL 3439291, *3 (Bankr.D.V.I. Aug.5, 2011) (expressing concern about avoidance proceedings, in which the defendant has a right to trial by jury).

37. Congress specifically enacted 28 U.S.C. §157 in response to the Supreme Court's decision in *Northern Pipeline* which held, in a plurality opinion, that a bankruptcy court did not have jurisdiction to hear a prepetition breach of contract claim that the debtor-in-possession had brought. The *Northern Pipeline* holding was based primarily on the premise that granting the bankruptcy court such jurisdiction allowed a non-Article III court to adjudicate claims based on state-created private rights arising independent from and antecedent to the bankruptcy proceedings, and involving individuals that would not otherwise be parties to the bankruptcy proceeding. *See Northern Pipeline,* 458 U.S. at 84. Congress subsequently established 28 U.S.C. §157 to remedy the defects in the bankruptcy system noted in *Northern Pipeline.* As indicated in *Stern*, although the Bankruptcy Court may now have statutory core jurisdiction over Chapter 5

avoidance claims pursuant to its statutory authority under 28 U.S.C. §157(b)(2)(H), that authority may not be exercised unless it is also constitutional.

38. Although codified by the Bankruptcy Reform Act of 1978, Chapter 5 avoidance claims in bankruptcy do not fall within the public rights exception. *Granfinanciera,* 492 U.S. at 56. That reasoning was reaffirmed by *Stern* as the Supreme Court rejected the contention that the debtor's compulsory counterclaim fell under the public rights exception:

> *Granfinanciera's* distinction between actions that seek "to augment the bankruptcy estate" and those that seek "a pro rata share of the bankruptcy res," reaffirms that Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. *Stern,* 131 S.Ct. at 2618 (emphasis in the original).

39. Such language implies that bankruptcy actions tied to the claims allowance process would fall within the public rights exception as integrally related to federal administration of bankruptcy, while actions to augment the estate would not. Since Trustee's avoidance claims, along with its breach of duty claims, are essentially a common law claim attempting to augment the estate, they do not stem from the bankruptcy itself and would not be resolved in the claims allowance process, and therefore it is a private right that must be adjudicated by an Article III court. However, what is distinguishable in this case is that in order to even get to the objection and subordination of McGovern's claims in the CDDNW Bankruptcy Case (since he has none in the CDD Bankruptcy Case, and no other Movant has filed a claim in either case), the state law claims must be adjudicated first since the claims objection and subordination is predicated on McGovern's alleged breach of his duty to CDDNW (and it can't be based upon his duties to CDD since he has filed no claim it that Debtor's case).

40. As such, for the Bankruptcy Court to assert jurisdiction over the Trustee's claims,

which only arise under state law, as core proceedings would be unconstitutional, when the Movants, and all Defendants other than McGovern, have neither filed a proof of claim in the bankruptcy nor have any of the Movants otherwise consented to the Bankruptcy Court's jurisdiction to enter final orders and judgments, and all Movants have a constitutional right to trial by jury presided over by an Article III judge which right they have not waived.

WHEREFORE, Movants, requests the District Court enter an Order withdrawing its reference, pursuant to 28 U.S.C. §157(e), on the basis set forth in ¶5 herein above, and for such further relief as this Court deems just and proper.

## NO PRIOR APPLICATION

No prior motion for the relief requested herein has been made to this Court or any other Court.

## CONCLUSION

WHEREFORE, the undersigned respectfully requests that the Court enter an Order granting this Motion and for all other relief that the Court deems just and proper.

Dated: June 3, 2015

Respectfully submitted,

**Gray Robinson, P.A.**
*Counsel for Margarita Morales-Perez*
333 S.E., 2nd Avenue, Suite 3200
Miami, Florida 33131
Tel: 305.416.6880
Fax: 305.416.6887
and
401 East Last Olas Blvd., Suite 1000
Fort Lauderdale, Florida 33301
Tel: 954.761.8111
Fax: 954.761.8112

By: /s Ivan J. Reich
Neil P. Linden, Esq.

Case 15-01292-JKO  Doc 19  Filed 06/03/15  Page 24 of 24

Florida Bar No.: 174589
Neil.Linden@gray-robinson.com
Ivan J. Reich, Esq.
Florida Bar No. 778011
Ivan.Reich@gray-robinson.com

**Broad and Cassel**
*Counsel for Stephen M. Krupa, David
Eichler, John Docherty, and Joseph Riley*
390 North Orange Avenue
Suite 1400
Orlando, Florida 32801
Tel: 407.839.4200
Fax: 407.425.8377

By: /s Nicolette C. Vilmos /
Nicolette C. Vilmos, Esq.
Florida Bar No. 469051
nvilmos@broadandcassel.com

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of this Notice was served electronically upon all parties that have registered for CM/ECF service, including David C. Cimo, Esq. at dcimo@gjb-law.com and Marilee A. Mark, Esq.  at mmark@gjb-law.com, Genovese Joblove & Battista, P.A., Special Litigation Counsel for the Trustee, this 3rd day of June, 2015.

/s/Ivan J. Reich

\815063\2 - # 3586949 v1

**UNITED STATES BANKRUPTCY COURT FOR**
**THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re

COMPREHENSIVE CLINICAL
DEVELOPMENT, INC., et al.,

      Debtors.

_____/

MARC P. BARMAT, as Chapter 7 Trustee,

      Plaintiff,

v.

JOHN J. MCGOVERN,
MARGARITA MORALES-PEREZ,
STEPHEN M. KRUPA,
DAVID EICHLER,
JOHN DOCHERTY,
JOSEPH RILEY, and
MARVIN MOSER,

      Defendants.

_____

CASE NO. 13-17273-BK-JKO, et seq.
Chapter 7
(JOINTLY ADMINISTERED)

Adv. Proc. No.: 15-01232-JKO

**DEFENDANT JOHN J. MCGOVERN'S (I) NOTICE OF JOINDER TO**
**CO-DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE TO**
**THE BANKRUPTCY COURT AND (II) SUPPLEMENTAL MOTION**
**TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT**

Defendant John J. McGovern ("**McGovern**"), through undersigned counsel, pursuant to

28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a), Local Bankruptcy Rule 5011-

1, S.D. Fla. L.R. 87.3, and the *Order Setting Filing and Disclosure Requirements* [D.E. 3][1] entered

by the Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**"), moves

_____

[1] Unless otherwise noted, all references to the docket shall be to the Adversary Proceeding's.

1

O'QUINN STUMPHAUZER & SLOMAN, PL, SUNTRUST INTERNATIONAL CENTER, ONE SE THIRD AVE.,
STE 1820, MIAMI, FL 33131

the District Court for the Southern District of Florida (the "**District Court**") to immediately withdraw the reference to the Bankruptcy Court for the entirety of the above-captioned adversary proceeding (the "**Adversary Proceeding**") and joins in his Co-Defendants' Withdrawal Motion (defined below) (the "**Motion**") and states:

**BACKGROUND**

1.      On March 29, 2013, Comprehensive Clinical Development, Inc. and Comprehensive Clinical Development NW, Inc. (collectively, the "**Debtors**") filed their respective Chapter 11 bankruptcy petitions.

2.      On July 11, 2013, McGovern, the Debtors' former CEO and one of their directors, filed three proofs of claims in Comprehensive Clinical Development NW, Inc.'s bankruptcy case for unpaid wages (Claim 26-1 in amount of $46,154), unreimbursed expenses (Claim 27-1 in the amount of $3,194.73), and severance (Claim 28-1 in the amount of $300,000) (collectively, the "**Claims**").

3.      On August 29, 2013, the Debtors' bankruptcy proceedings were converted to those under Chapter 7 of the Bankruptcy Code and Marc P. Barmat (the "**Trustee**") was appointed as the Chapter 7 trustee of the Debtors' jointly-administered bankruptcy estates.

4.      On April 1, 2015, the Trustee initiated the Adversary Proceeding by filing a 17-count complaint (the "**Complaint**") against McGovern and six other of the Debtors' former officers and directors (collectively, the "**Co-Defendants**," with McGovern, the "**Defendants**"). [D.E. 1].

5.      The core of the Trustee's complaint is that the Defendants breached their fiduciary duties to the Debtors.  Complaint at ¶¶ 22 – 99 and 109 – 132.  As a result of the Defendants' alleged breaches of fiduciary duty, the Trustee theorizes that the Defendants' compensation during

2

the years leading up to the bankruptcy filing were not rightfully earned and the Debtors' debts to the Defendants for unpaid compensation and severance are not owed.  Accordingly, the Trustee sued McGovern for: (i) breach of fiduciary duty under Delaware law (Count 1) *Id.* at ¶¶ 109 − 118, (ii) breach of fiduciary duty under Florida law (Count 2) *Id.* at ¶¶ 119 − 132, (iii) receipt of fraudulent transfers and/or preferential payments (Count 15) *Id.* at ¶¶ 277 − 288, (iv) objection to his Claims (Count 16) *Id.* at ¶¶ 286 − 288, and (v) equitable subordination of his Claims (Count 17) *Id.* at ¶¶ 289 − 292.  Counts 1 and 2 are referred to as the "**Fiduciary Duty Claims**" and Counts 15, 16, and 17 are referred to as the "**Non-Fiduciary Duty Claims**."

6.      The Trustee made a jury demand in the Complaint.  *Id.* at ¶ 293.

7.      Simultaneously with the filing of this Motion, McGovern's Co-Defendants filed a motion to withdraw the reference by which they seek an Order of the District Court withdrawing the reference to the Bankruptcy Court for the entirety of the Adversary Proceeding, demand a jury trial, and do not consent to the Bankruptcy Court conducting the jury trial (the "**Co-Defendants' Withdrawal Motion**").  [D.E. 19].

8.      Like the Trustee and the Co-Defendants, McGovern demands a jury trial for all counts against him and does not consent to the Bankruptcy Court conducting the jury trial.

## RELIEF REQUESTED AND BASIS THEREOF

9.      Cause exists for the District Court to withdraw the reference to the Bankruptcy Court for the entirety of this Adversary Proceeding or, at least, for all case dispositive pleadings and trial.  First, the Trustee's primary causes of action against McGovern are non-core and, therefore, the Bankruptcy Court cannot enter final judgment on them.  Second, the Trustee and all of the Defendants have exercised their demand for a jury trial and the Defendants do not consent to the jury trial occurring in the Bankruptcy Court.  Third, withdrawing the reference will ensure

O'QUINN STUMPHAUZER & SLOMAN, PL, SUNTRUST INTERNATIONAL CENTER, ONE SE THIRD AVE., STE 1820, MIAMI, FL 33131

Case 15-02232-JKO  Doc 20  Filed 06/03/15  Page 4 of 9

uniformity in administration, shorten adjudication of the Adversary Proceeding, and will conserve the parties' and courts' resources.

**A.**  **<u>Standard.</u>**

10.     The District Court may withdraw the reference to the Bankruptcy Court for *cause*. 28 U.S.C. § 157(d).  Although the Bankruptcy Code does not define "cause," courts in the 11th Circuit consider the following factors in determining whether it exists: (1) the advancement of uniformity in bankruptcy administration, (2) decreasing forum shopping and confusion, (3) promoting the economical use of parties' resources, (4) facilitating the bankruptcy process, (5) whether the claim is core or non-core, (6) efficient use of judicial resources, (7) a jury demand, and (8) prevention of delay.  *Osborne v. Kadock (In re Aurora Capital, Inc.)*, 2013 U.S. Dist. LEXIS 70437, *4 -5 (S.D.Fla. May 17, 2013) *citing Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 742 (11th Cir. 2000).  None of these factors are determinative, but courts have explained that where, as here, a jury demand "can, in itself, provide sufficient cause to withdraw the reference." *In Aurora Capital* at *2.

11.     In determining whether to withdraw the reference, "a district court should first evaluate whether" the bankruptcy court can fully adjudicate the proceeding because "questions of efficiency and uniformity depend largely on the character of the proceeding." *Hyman v. Capital One Bank (USA) N.A. (In re Ausburn)*, 2010 U.S. Dist. LEXIS 134536, at **2-3 (M.D.Fla. December 10, 2010).  When a proceeding cannot be fully adjudicated by the bankruptcy court, judicial efficiency is increased by withdrawal.  *See In re Orion Pictures Corporation*, 4 F.3d 1095, 1101 (2nd Cir. 1993).

B. **Cause Factors.**

     i. *The Claims Against McGovern are Non-Core.*[2]

12.    The Bankruptcy Court cannot fully adjudicate this Adversary Proceeding. The linchpin of the Trustee's Complaint is that McGovern and his co-defendants breached their fiduciary duties to the Debtors. The Trustee's remaining Non-Fiduciary Duty Claims are all directly derived from and factually intertwined with the Trustee's Fiduciary Duty Claims. As for the Non-Fiduciary Duty Claims, the Trustee's theory is that due to McGovern's alleged breach of his fiduciary duties, he did not provide reasonably equivalent value for his compensation from the Debtors or Claims against the Debtors.

13.    A determination that a cause of action is non-core weighs in favor of withdrawing the reference. *See Residential Funding Co., LLC v. Suntrust Mortg., Inc. (In re Residential Capital, LLC),* 2015 U.S. Dist. LEXIS 2093, at *23 (S.D.N.Y. February 20, 2015). Breach of fiduciary duty claims are quintessential "non-core" claims. *See Official Comm. of Unsecured Creditors of Allied Sys. Holding v. Yucaipa Am. Alliance Fund I, L.P. (In re Allied Sys. Holdings)*, 524 B.R. 598, 606 (Bankr.D.Del. 2015); *In re Wash. Mut., Inc.,* 2012 Bankr. LEXIS 4673, at *2 (Bankr. D. Del. Oct. 4, 2012) ("[The] breach of fiduciary duty claims are ordinary state law causes of action of the type that are brought in state courts across the country with no connection to the Bankruptcy Code or a bankruptcy case."); and *Peterson v. 610 142 Owners Corp. (In re 610 W. 142 Owners Corp.),* 219 B.R. 363, 370 (Bankr.S.D.N.Y. 1998). Accordingly, the Trustee's Fiduciary Duty Claims are non-core.

---

[2] For the sake of brevity and conserving judicial resources, McGovern respectfully refers the Court to McGovern's Co-Defendants' Withdrawal Motion for a more detailed discussion of why the claims against the Defendants are non-core.

14.     Further, the Trustee's Non-Fiduciary Duty Claims are inextricably factually intertwined with the Fiduciary Duty Claims, as a ruling on the former necessarily requires a determination as to whether the McGovern is liable for the former.  Put another way, if the District Court determines that McGovern did not breach his fiduciary duties to the Debtors, then he is not liable for the Non-Fiduciary Duty Claims.  As such, the Non-Fiduciary Duty Claims are also non-core as they necessarily require a determination as to whether McGovern breached his fiduciary duties to the Debtors.  Regardless, even if the District Court determines that the Non-Fiduciary Duty Claims are core, it is in all parties' and the courts' interest for the District Court to consider the claims together as the Fiduciary Duty Claims are the Trustee's primary causes of action, require the most complex factual discovery and analysis, seek the most damages by far,[3] and the Bankruptcy Court lacks jurisdiction to finally determine them.

15.     As discussed *infra*, a bankruptcy court lacks jurisdiction to enter final orders in non-core matters.  Accordingly, as the Bankruptcy Court cannot enter a final judgment on the Trustee's Fiduciary Duty Claims and, likely, his Non-Fiduciary Duty Claims.  Therefore, this factor favors withdrawing the reference.

>           ii.     *The Trustee and McGovern and his Co-Defendants Have all Demanded a Jury Trial and the Defendants Do Not Consent to that Trial Being Conducted by the Bankruptcy Court.*

16.     A demand for a jury trial favors withdrawing the reference.  *See Geron v. Levine (In re Levine)*, 2012 U.S. Dist. LEXIS 12292, at *9-10 (S.D.N.Y. February 21, 2012).  The Trustee, McGovern, and the Co-Defendants have all demanded a jury trial.  Further, the Defendants do not consent to a jury trial before the Bankruptcy Court.  Thus, the District Court must conduct the jury trial in this Adversary Proceeding.  *See* 28 U.S.C. § 157(e) ("the bankruptcy judge may conduct

---

[3] *Cf.* alleged damages of $5,000,000 related to fiduciary duty claims with McGovern's Claims worth approximately $350,000 and his pre-petition compensation in the amount of approximately $415,000 that the Trustee seeks to avoid.

O'QUINN STUMPHAUZER & SLOMAN, PL, SUNTRUST INTERNATIONAL CENTER, ONE SE THIRD AVE.,
STE 1820, MIAMI, FL 33131

the jury trial [only] with the express consent of all the parties."); *see also* Fed.R.Bankr.P. 9015(b) ("If the right to a jury trial applies . . . the parties may consent to have a jury trial conducted by a bankruptcy judge."). Additionally, "a demand for a jury trial in a non-core case can, in itself, provide sufficient cause to withdraw the reference." *In re Aurora Capital*, 2013 U.S. Dist. LEXIS 70437, at *5. Accordingly, as all of the parties have demanded a jury trial and this case is non-core, this factor favors withdrawing the reference to the Bankruptcy Court.

17.     To the extent that the District Court determines that McGovern's act of filing the Claims vests the Bankruptcy Court with jurisdiction to finally determine the Non-Fiduciary Duty Claims and/or deprives McGovern of his right to a jury trial on those causes of action and tips the scale against withdrawing the reference for this Adversary Proceeding, McGovern respectfully requests that the Court enter an order withdrawing the reference from the Bankruptcy Court contingent on McGovern successfully withdrawing his Claims. *See e.g. Feld v. Albright (In re Maui Indus. Loan & Fin. Co.)*, 2012 Bankr. LEXIS 735 at *6 (Bankr. D.Hi. February 8, 2012) (authorizing defendant to withdraw proof of claim in bankruptcy case and restore right to jury trial); *see also,* Fed.R.Bankr.P. 3006 (authorizing creditors to withdraw their claims).

        *iii. The Remaining Cause Factors All Favor Withdrawing the Reference.*

18.     Withdrawing the reference will promote the economical use of the courts' and parties' resources. A bankruptcy court may only enter a final judgment in a core proceeding. 28 U.S.C. § 157(c)(1). "In non-core proceedings, a bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court, which may enter final judgment after *de novo* review." *Fisher Island Invs., Inc. v. Solby+Wstbrae Partners*, 778 F.3d 1172, 1189-1190 (11th Cir. 2015) (internal citations omitted). As this case revolves around non-core claims, i.e. the Fiduciary Duty Claims, the Bankruptcy Court cannot finally adjudicate it. Thus, if the District

7

Court does not withdraw the reference, it will be obligated to review the Bankruptcy Court's findings of fact and conclusions of law *de novo*. This process will only serve to unnecessarily multiply the parties' and the courts' efforts in the litigation. Withdrawing the reference serves to conserve the courts' and parties' resources. Therefore, this factor favors withdrawing the reference.

19.     Withdrawing the reference will also advance and facilitate uniformity in the proceeding and decrease delay and potential confusion. If the reference is not withdrawn, the Adversary Proceeding will be litigated in multiple courts. Conducting this Adversary Proceeding in multiple courts will not only create delays and inefficiencies, but may also result in confusion and divergent outcomes within the same proceeding. Similarly, as discussed, a determination regarding the Trustee's Non-Breach of Fiduciary Duty Claims rely on the theory that McGovern's alleged breach of fiduciary duty to the Debtors means that he was not entitled to his pre-petition compensation or Claims against the Debtors' estates. Accordingly, if the Adversary Proceeding is bifurcated, the Bankruptcy Court would necessarily have to wait until the District Court determined the extent of McGovern's liability, if any, on the Trustee's Fiduciary Duty Claims. This would cause an untenable delay in the Adversary Proceeding. Accordingly, these factors also favor withdrawing the reference to the Bankruptcy Court for the entirety of the Adversary Proceeding.

20.     Based on the foregoing cause exists for the District Court to withdraw the reference to the Bankruptcy Court for the entirety of the Adversary Proceeding.

WHEREFORE, John J. McGovern respectfully requests an Order of the Court withdrawing the reference to the Bankruptcy Court for the entirety of the Adversary Proceeding, including all

case-dispositive pleadings and pre-trial matters, and for all further relief that the Court deems just and equitable.

Dated: June 3, 2015

Respectfully submitted,

By: /s/ Elan A. Gershoni
**O'Quinn Stumphauzer & Sloman, PL**
*Counsel for John J. McGovern*
One SE Third Avenue, Suite 1820
Miami, Florida  33131
Tel: (305) 371-9686
Fax: (305) 371-9687
Ryan D. O'Quinn, Esq.
Florida Bar No.: 513817
ROquinn@OSSlaw.com
Elan A. Gershoni, Esq.
Florida Bar No.: 95969
EGershoni@OSSlaw.com

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of this Notice was served electronically upon all parties that have registered for CM/ECF service, including David C. Cimo, Esq. at dcimbo@gjb-law.com and Marilee A. Mark, Esq. at mmark@gjb-law.com, Genovese Joblive & Battista, P.A., Special Litigation Counsel for the Trustee, Ivan J. Reich, Esq. at ivan.reich@gray-robinson.com and Neil P. Linden, Esq. at neil.linden@grayrobinson.com as counsel for defendant Margarita Morales-Perez, and Nicolette Corso-Vilmos, Esq. at nvilmos@Broadandcassel.com, Broad and Cassel, as counsel for defendants Stephen M. Krupa, David Eichler, John Docherty, and Joseph Riley this 3rd day of June, 2015.

/s/ Elan A. Gershoni
Elan A. Gershoni, Esq.